IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| ALLISON BOUIER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 2:05-CV-00147-DRB |
| | ) | [wo] |
| JO ANNE B. BARNHART, | ) | |
| COMMISSIONER OF SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Following administrative denial of her application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.*, Allison Bouier ("Bouier") received a requested hearing before an administrative law judge ("ALJ") who rendered an unfavorable decision. Because the Appeals Council rejected review, the ALJ's decision became the final decision of the Commissioner of Social Security ("Commissioner"). Judicial review proceeds pursuant to 42 U.S.C. § 405(g) and 28 U.S.C. § 636 (c), and for reasons herein explained, the court concludes that the Commissioner's decision should be affirmed.

## I. STANDARD OF REVIEW

Judicial review of the Commissioner's decision to deny benefits is limited. The court cannot conduct a *de novo* review or substitute its own judgment for that of the Commissioner. *Walden v. Schweiker*, 672 F.2d 835 (11th Cir. 1982). This court must find the Commissioner's decision conclusive "if it is supported by substantial evidence and the correct legal standards were applied." *Kelley v. Apfel*, 185 F. 3d 1211, 1213 (11th Cir. 1999), *citing Graham v. Apfel*, 129 F. 3d 1420, 1422 (11th Cir. 1997).

Substantial evidence is more than a scintilla — i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995), *citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

If the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the court would have reached a contrary result as finder of fact, and even if the court finds that the evidence preponderates against the Commissioner's decision.  *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).  The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  *Foote*, 67 F.3d at 1560.

The district court will reverse a Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law.  *Keeton v. Department of Health and Human Services*, 21 F.3d 1064, 1066 (11th Cir. 1994).

## II.  ADMINISTRATIVE FINDINGS

Bouier, born in 1968, has not engaged in substantial gainful activity since March 22, 2002, the alleged onset date of disability.  The ALJ found that Bouier has the following severe impairments: *non-insulin dependent diabetes mellitus, hypertension, dysthymic disorder, mild recurrent major depression, and current intellectual functioning in the borderline to mildly mentally retarded range.*  After  considering them individually and in combination,  he concluded that they did not  meet or equal in severity – any impairment listed in 20 C.F.R. Part 404, Subpart P,  Appendix 1.  The ALJ considered, but found

to be without merit, the contention that Bouier's impairments meet the "mental retardation" disability requirements of Listing § 12.05(C).

Finding Bouier's subjective complaints of pain and functional limitations "not credible", the ALJ determined that she was unable to perform her past relevant work but retained the residual functional capacity ("RFC") to perform other jobs which exist in significant numbers in the national economy. Accordingly, the ALJ concluded that Bouier is "not disabled" under the Social Security Act.[1]

## III.  ISSUES

Bouier specifies this sole issue for judicial review which challenges the ALJ's analysis at step three of the five-step sequential evaluation process:

> Whether the final decision of the Commissioner of the Social Security Administration denying benefits to Plaintiff is supported by substantial evidence and whether improper legal standards were applied--
>
> Specifically whether the Commissioner committed reversible error by failure to award benefits pursuant to 20 CFR Part 404 Subpart P Appendix 1 Section 12.05C.[2]

## IV.  DISCUSSION

A level-three conclusion that a claimant's severe impairments meet or equal a listed impairment dictates a finding of disability, thus, if the ALJ's analysis of Bouier's Listing §12.05(C) contention is unsupported, remand is dictated; and if the record is fully developed, the remand will

---

[1]R.20-24, 29. The ALJ's disability analysis followed the five-step sequential evaluation process set forth in 20 C.F.R. §404.1520 and summarized in *Phillips v. Barnhart*, 357 F. 3d 1232 (11th Cir. 2004).

[2]Memorandum of Law in Support of Plaintiff's Argument ("*Pl.'s Br.*") at 1 (Doc. 11, July 1, 2005).

be accompanied by instructions to award benefits.

### A.    Listing § 12.05(C): Burden of Proof

The claimant's burden of proof for a listed disability includes, as explained in *Zebley v. Sullivan*, 493 U.S. 521, 530 (1990), specific medical findings to match the medical requirements for the listed impairment:

> Each impairment [in the Listings] is defined in terms of several specific medical signs, symptoms, or laboratory test results. For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify.[3]

As defined in Listing §12.05, "[m]ental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22. The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied." Listing §12.05(C) sets these severity requirements:

> A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function.

In *Lowery v. Sullivan*, 979 F.2d 835, 838 (11th Cir. 1992), the Eleventh Circuit "implicitly recognized that a claimant meets the criteria for presumptive disability under Listing §12.05(C) when the claimant presents a valid IQ score of 60 to 70 and evidence of additional mental or physical

---

[3]*See also Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991) ("Diagnosis of a listed impairment is not alone sufficient; the record must contain corroborative medical evidence supported by clinical and laboratory findings."); *Wilkinson on Behalf of Wilkinson v Bowen,* 847 F.2d 660, 662 (11th Cir. 1987) (claimant must present evidence which describes how an impairment has the equivalency of a listed impairment); *Bell v. Bowen*, 796 F.2d 1350, 1353 (11th Cir. 1986).

4

impairment." *Hodges v. Barnhart*, 276 F.3d 1265, 1269 (11th Cir. 2001).   Following the reasoning of the Fourth and Eighth Circuits "that IQs remain fairly constant throughout life"[4], the Eleventh Circuit in *Hodges* "formally recognized this presumption" in its first-impression consideration "whether a claimant must present affirmative evidence that she manifested deficits in adaptive functioning before age twenty-two." Confirming the Commissioner's authority to rebut this presumption of mental impairment by presenting evidence of the claimant's "daily life", the *Hodges* court stressed that its holding – that absent evidence of sudden trauma that can cause retardation, the IQ tests create a rebuttable presumption of a fairly constant IQ throughout life – "does not, however, shift the burden of proof from a claimant to prove entitlement to social security benefits." *Id.*

###### B.      Contentions

As support for her claim of presumptive disability for mental retardation under Listing §12.05(C),  Bouier  points to her October 10, 2002, psychological evaluation by Dr. Glen D. King, who assessed her full scale IQ of 64, performance IQ of 67 and verbal IQ of 67 *and* the ALJ's finding that she suffers from non-insulin dependent diabetes mellitus, hypertension, dysthymic disorder and mild recurrent major depression as severe impairments.   Bouier contends that, contrary to caselaw, the ALJ stated that mental retardation is not a condition that remains constant throughout life and "appears to [have stated that] <u>Hodges</u> was wrong."   She also claims improper consideration of Dr. King's diagnosis of mild mental retardation.[5]

---

[4]*See Luckey v. U.S. Dept. of Health & Human Srvs.*, 890 F.2d 666, 668 (4th Cir. 1989) and *Muncey v. Apfel*, 247 F.3d 728, 734 (8th Cir. 2001).

[5]*Pl.'s Br.* at 4-5.

Citing Agency interpretations of Listing §12.05(C), the Commissioner insists that the Listing specifies a first-prong requirement of "mental retardation, i.e., significantly subaverage general intellectual functioning with deficits in adaptive behavior initially manifested during the developmental period".[6] With respect to the two-prong requirements of Listing §12.05(C), the Commissioner concedes that the ALJ's finding of additional severe impairments for Bouier satisfies the latter prong but argues that notwithstanding Dr. King's IQ assessment, the ALJ properly examined other evidence and found it inconsistent with the mental retardation suggested by Bouier's IQ.[7]

   **C.    Analysis**

The Commissioner contends incorrectly that the claimant must prove as a "first prong" requirement for Listing §12.05(C) disability her pre-age 22 manifestation of "significantly subaverage general intellectual functioning with deficits in adaptive functioning", the reference for "mental retardation" specified in Listing § 12.05. *Hodges v. Barnhart* – a case which presented that question squarely –remains the prevailing law within the Eleventh Circuit, and it establishes only two evidentiary burdens for a claimant's presumptive disability for §12.05(C) mental retardation. In *Stallworth v. Barnhart*, No. 04-11720 (11th Cir., Nov. 12, 2004) – an unpublished affirmance of this court's ruling in Case No. 03-00619-CV-B-N – the Eleventh Circuit reiterated the evidentiary burdens set in *Hodges* :

> To establish a disability under Listing § 12.05(C), a claimant specifically must establish "a valid verbal, performance, or full scale IQ score of 60 through 70 and a

---

[6]Memorandum in Support of the Commissioner's Decision ("*Def.'s Br.*") at 4 (Doc. 12, July 25, 2005).

[7]*Def.'s Br.* at 4-8.

6

physical or other mental impairment imposing additional and significant work-related limitation of function. 20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.05 (C) (2003) (footnote omitted).  In addition, the general introduction on "mental retardation and autism" provides that a claimant must demonstrate that the retardation is a lifelong condition that manifested itself before the age of 22.  20 C.F.R. Part 404, Subpart P, Appendix I, § 12.05 (2003).

We have concluded that, absent evidence of a sudden trauma that can cause retardation, a valid IQ score between 60 and 70 creates a rebuttable presumption that the claimant was disabled under Listing § 12.05 (C) throughout his life.  Hodges v. Barnhart, 276 F.3d 1265, 1269 (11th Cir. 2001).  In reaching this conclusion in Hodges, we reasoned that "IQs remain fairly constant throughout life."  Id. at 1268-69.  Nevertheless, we cautioned that the Commissioner may rebut this presumption by presenting evidence on the  claimant's daily activities and behavior. (citations omitted)

Id. at 16.

This record contains no evidence that Bouier sustained any "sudden trauma that can cause retardation", and the parties embrace the ALJ's finding of additional severe impairments.  Thus, the court proceeds to analyze the ALJ's consideration of the evidence for a rebuttable presumption of disability under Listing §12.05(C).

Contrary to Bouier's assertion, the ALJ's pertinent discussion does not appear to reflect any improper statement that mental retardation does not remain constant throughout life nor any disagreement with the Hodges decision.  Acknowledging Bouier's IQ scores in October 2002 satisfied the first severity prong for Listing §12.05(C)– i.e., a valid verbal, performance, or full scale score IQ of 60 through 70– and her mild major depression, non-insulin dependent diabetes mellitus and hypertension satisfied the second prong– i.e., a physical or other mental impairment imposing an additional and significant work-related limitation of function – the ALJ found the evidence deficient for the §12.05 prerequisite of significantly subaverage general intellectual functioning with deficits in

*adaptive functioning initially manifested during the developmental period.*[8]

Because the ALJ found the record deficient with respect to Bouier's adaptive functioning prior to age twenty-two, in order to assess any mental retardation suggested by her IQ scores in 2002, the ALJ properly referenced all the evidence relating to her IQ scores and to work-related and other adaptive limitations of function.[9]  In contrast to the *Hodges* claimant, Bouier presented the ALJ with

---

[8]In considering the evidence concerning her general intellectual functioning and adaptive functioning prior to age twenty-two, the ALJ stated:

> *First,* the individual must have significantly subaverage general intellectual functioning manifested during the developmental period. In the instant case, the claimant's school records indicate that although she did graduate from high school, she was in a special education curriculum.  Therefore, one must infer that she had significantly subaverage general intellectual functioning manifested during the developmental period.

> *Second,* the claimant must have deficits in adaptive behavior initially manifested before age twenty-two...In the case at bar, the record establishes that the claimant had deficits in functional academic skills during the developmental.  It is not, however, established that she had deficits in communication, self-care, home living, social/interpersonal skills, use of community resources, self-direction, work, leisure, health, or safety.  Thus, the record establishes that she had deficits in only one area of adaptive functioning but there is no evidence of significant limitation in any other area.  Therefore, the record does not establish that the claimant had deficits in two areas of adaptive functioning as required by the DSM-IV as one of the key elements for establishing mental retardation.

(R. 21-22).

[9]The ALJ stated:

> I also considered the recent holding of the court in the case of *Hodges v. Barnhart*, 276 F. 3d 1265 (11th Cir. 2001).  In that case, the court concludes there is a presumption that the condition of mental retardation remains constant through life.  The court also finds that a claimant need not present evidence that she manifested deficits in adaptive functioning before the age of twenty-two, when she presented evidence of low IQ test results after the age of twenty-two.  This case is distinguished from *Hodges*, wherein the record

school records  which evidenced her enrollment in a special education curriculum and a School Ability Index ("SAI") of 80 obtained during a 1985 Otis-Lennon School Ability Test ("OLSAT") with placement slightly below the broad average band of scores.[10]  In addition, Bouier presented the ALJ with evidence concerning her adaptive functioning after the developmental period.  Such evidence justified the ALJ's focus on the reliability of the IQ scores by evaluating the record of Bouier's daily life functions and activities.

_____

was devoid of any evidence relating to Hodges' mental capabilities before the age of twenty-two and Hodges had no past relevant work.  Both are present in the instant case.  The presumption that mental retardation is a condition that remains constant throughout life is clearly rebutted in the instant case because the claimant's adaptive functioning prior to age twenty-two and after age twenty-two is inconsistent with the functioning of a mentally retarded individual.  The Vocational Expert testified that most of her past relevant work involved semi-skilled or skilled work.

It is not established that she is mentally retarded because deficits in adaptive functioning are only demonstrated in one area before she attained age twenty-two.  Moreover, her adaptive functioning after attaining twenty-two has remained relatively high.  She has maintained employment and been a productive member of society for most of her adult life.  She passed the test to become a licensed driver and Dr. King reported that she resided alone with her 11-year-old son.  Though Dr. King diagnosed the claimant with mild mental retardation, I give little weight to his opinion.  Dr. King's opinion is not entitled to deference because he is a one time examiner.  I also find it noteworthy that Dr. Sellers-Bok, the psychiatrist who attended the claimant while she was hospitalized for depression in April 2000, did not diagnose her with mild mental retardation.  Moreover, her therapist at Montgomery Area Mental Health Authority consistently estimated her intelligence to be average.

(R. 22-24).

[10]Finding Bouier's SAI score of 80 "more consistent with low average intelligence than with mild mental retardation", the ALJ explained that the OLSAT measures abstract thinking and reasonability which is an indicator of a student's ability to cope successfully with school learning tasks and scores in the SAI column estimate the student's probable success in academic pursuits.  The average (mean) SAI score is 100, with 90-110 representing a broad average band.  Approximately 68 percent of students' SAI scores fall between 84 and 116.  (R. 19-20).

The law is clear that the ALJ's findings of current mental retardation should not rest solely on the claimant's IQ tests.  *See Lowery v. Sullivan*, 979 F. 2d 835, 837 (11th Cir. 1992) ("This court, however, has recognized that a valid I.Q. score need not be conclusive of mental retardation where the I.Q. score is inconsistent with other evidence in the record on the claimant's daily activities and behavior."); *see also Popp v. Heckler,* 779 F. 2d 1497, 1499-1500 (11th Cir. 1986) (holding that evidence other than IQ tests should be examined "to assure consistency with daily activities and behavior").  As diagnosis alone is insufficient to demonstrate that Bouier met Listing §12.05(C), *see Carnes v. Sullivan*, 936 F.2d at 1218,  the ALJ properly considered Dr. King's diagnosis of mild mental retardation along with the other evidence in the record.

After considering the relevant evidence for assessing Bouier's IQ scores, the ALJ rejected a finding of current mental retardation.  Evidentiary facts buttressing the ALJ's adverse assessment of Bouier's claimed Listing level mental retardation include: (a) gainful employment as a nursing assistant, cashier, assistant manager at a beauty supply store, teacher's aide, and housekeeper;[11] (b) vocational expert testimony that her past relevant work included semi-skilled or skilled work and that her past employment as an assistant manager, nursing assistant and teacher's aide was above what would be expected of an individual with a special education background and a full scale IQ score of 64; [12]  (c) completion of "special job training, trade or vocational" school in "clerical and unit clerk" in August 1988;[13]  (d) adequate attention spans and concentration abilities to permit attendance at Bible study and church, reading the Bible when not affected by blurred vision, and

---

[11]R. 15, 22, 120-129, 368-371, 389-390.

[12]R. 15, 22, 389-391.

[13]R. 101.  At the hearing, Bouier testified that she received training to be a nursing assistant "[b]ack in '87 , '88" at the Tuskegee Job Corps in Tuskegee, Alabama.  (R. 368).

watching television;[14] (e) reliance on others for assistance with personal needs, including shopping and household chores due to her physical impairments rather than any mental retardation;  (f) sole responsibility for the care of her twelve year old son for a period of time followed by more recent assistance by a male relative and periodic checks by her father and other relatives due to her physical impairments rather than any mental retardation;[15] (g) attainment of a driver's license;[16]  (h) lack of any diagnosis of mental retardation by her treating psychiatrist;[17] and (i) an estimated average intelligence by her treating mental health therapist.[18]

Substantial evidence supports the ALJ's finding of sufficient rebuttal evidence for any presumption of mental retardation.   *See Popp v. Heckler,* 779 F. 2d 1497, 1499-1500 (11th Cir. 1986) (rejecting contention that claimant meets §12.05(C) where IQ score was inconsistent with evidence claimant had a two-year college degree, was currently enrolled in college and had worked in various technical fields such as an administrative clerk and an algebra teacher); *Whetstone v. Barnhart*, 263 F. Supp. 2d 1318, 1325-26 (M.D. Ala.2003) (In discounting IQ scores, ALJ properly considered other evidence in the record, including the claimant's work history as a sewing machine operator for 17 years); *Sellers v. Barnhart*, 246 F. Supp. 1201 (M.D. Ala. 2002).

---

[14]R. 110.

[15]R. 23, 114-119, 365-366.

[16]R. 23, 366.

[17]R. 24.

[18]R. 24, 209.

## V.  CONCLUSION

For the reasons explained, the court concludes that the decision of the Commissioner is supported by substantial evidence and proper application of the law.  Accordingly, it is

**ORDERED** that the decision of the Commissioner is **AFFIRMED**.  A separate judgement will be entered.

Done this 19th  day of April, 2006.


/s/ **Delores R. Boyd**
DELORES R. BOYD
UNITED STATES MAGISTRATE JUDGE

12